IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ALBERTO HERNANDEZ MENDEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:26-cv-1881 (AJT-LRV) |
| MARKWAYNE MULLIN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

Before the Court is Alberto Hernandez Mendez's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 seeking release from Immigration and Customs Enforcement ("ICE") custody that began on June 28, 2026 on the grounds that his ongoing detention violates the Immigration and Nationality Act (the "INA"), his constitutional due process rights, and the INA's implementing regulations. Upon consideration of the filings, and for the reasons stated below, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen El Salvador who entered the United States in or around 2005, following which, in 2011, Petitioner was placed in removal proceedings. [Doc. No. 4-4] ¶¶ 4–5, 8. On January 17, 2012, Petitioner filed an application for asylum and withholding of removal, and on that same day, was granted release on bond of $10,000. *Id.* ¶¶ 8–10. On May 3, 2013, an immigration judge denied Petitioner's application for asylum and ordered him removed from the United States with withholding of removal to El Salvador. *Id.* ¶ 12. On September 16, 2013, Petitioner's bond was cancelled, and Petitioner was released pursuant on an Order of Supervision ("OSUP") pursuant to 8 C.F.R. § 241.4. *Id.* ¶¶ 13–14; [Doc. No. 1-2] at 1. On September 22, 2017,

Petitioner received a misdemeanor conviction in Virginia state court. [Doc. No. 4-4] ¶ 16. On June 26, 2026, Petitioner received a notification from ICE ordering that he appear at the Chantilly Field Office on the morning of Sunday, June 28, 2026, which Petitioner complied with and was taken into civil immigration detention and subsequently transferred to the Caroline Detention Center, where he remains detained. [Doc. No. 1] ¶¶ 46–47. Thereafter, four days later, on July 2, 2026, the same day that Respondents' opposition was due to the Petition, Respondents formally revoked Petitioner's OSUP pursuant to 8 CFR § 241.4(*l*) with a notice signed by an Assistant Field Office Director for ICE, stating that the revocation decision "is a determination that revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Director of ERO." [Doc. No. 4-2] at 1–2. Respondents submit that they have paused Petitioner's removal efforts due to this pending Petition but are prepared to immediately "transfer Petitioner to Southwest Border facility and present Petitioner to Mexico for acceptance." [Doc. No. 4-4] ¶ 21.

## II. LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted).

## III. DISCUSSION

Petitioner contends that (1) his detention violates 8 U.S.C. § 1231(a)(6) and his due process rights (Counts I, II); (2) the revocation of his OSUP violates the INA's implementing regulations (Count IV); and (3) Petitioner's removal to Mexico (a third-country not identified on his removal order) without Immigration Judge review of his fear claim violates Petitioner's due process rights

(Count V). [Doc. No. 1].[1] In opposition, Respondents contend that Petitioner's detention is lawful because it properly revoked Petitioner's OSUP; he has been detained for less than six months and therefore satisfies *Zadvydas v. Davis*, 533 U.S. 678 (2001); and Petitioner's claims regarding the process by which his third country removal will be effectuated are not ripe.

A. Revocation of Petitioner's Order of Supervision

Petitioner claims that the revocation of his OSUP violates the INA Regulations, 8 C.F.R. §§ 241.4(*l*), and the *Accardi* doctrine, which requires an agency to follow its own procedures and regulations. *See Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid.").

The INA's regulations create two different types of release following an order of removal. Under 8 C.F.R. § 241.4, "DHS may release a[] [noncitizen] under an order of supervision if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future." *Garcia-Rivera v. Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *2 n.3 (E.D. Va. Mar. 2, 2026) (quoting *Phommachak v. Wesling*, No. 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026)). Alternatively, DHS may release a noncitizen under 8 C.F.R. § 241.13 "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3 (internal quotation marks omitted).

An order of release under section 241.4 may be revoked where (1) the purposes of release

[1] Because the Court concludes that Respondents violated 8 C.F.R. § 241.4(*l*) in revoking Petitioner's Order of Supervision, the Court does not address Petitioner's due process claim under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*.

have been served, (2) the noncitizen violates any condition of release, (3) it is appropriate to enforce a removal order or commence removal proceedings, or (4) the conduct of the noncitizen indicates that release would no longer be appropriate. 8 C.F.R. § 241.4(*l*)(2). That regulation requires notifying the noncitizen of the "reasons for revocation of his or her release or parole" and afford the noncitizen "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.4(*l*)(1). As to who may exercise authority under Section 241.4(l)(2), the regulations provide that either the Executive Associate Commissioner ("EAC") can exercise their discretion to revoke release, or a district director can revoke release in the limited circumstance where "in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Respondents submit that the revocation of Petitioner's OSUP does not violate the *Accardi* doctrine because it promptly issued the revocation notice four days after Petitioner was detained and further satisfied the procedural requirements of Section 241.4(*l*)(2). [Doc. No. 4] at 11–12. The Court disagrees.

Here, Respondents revoked Petitioner's OSUP in violation of the applicable regulations on June 28, 2026 when they detained him without the required notice, including the "reasons for revocation of his or her release or parole" and "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*). And the notice they finally did provide on July 2, 2026, likewise failed to provide the "reasons for revocation of his or her release

or parole" so that he could "respond to the reasons for revocation stated in the notification."

Respondents contend to have satisfied the notification requirement because Petitioner's revocation notice states that DHS's intention on removing Petitioner to Mexico "is a determination that revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Director." [Doc. No. 4] at 12. But as this Court previously held, without any finding or explanation "as to why revocation of the order of supervision serves the public interest, or why circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner . . . the Court cannot infer that to be the case—nor is it required to do so—where the regulations require such a determination." *Serpas v. Simon*, No. 1:25-CV-02369-AJT-WBP, 2026 WL 1244544, at *5 (E.D. Va. Feb. 3, 2026) ("[T]he requirement that a senior official make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement but instead part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process.") (internal quotations omitted). Respondents' action of first detaining Petitioner despite his valid OSUP, which it only attempted to revoke four days later when Respondents' opposition to the Petition was due, further suggests that the revocation notice was effectuated as a "housekeeping requirement," as opposed to ensuring Petitioner was provided adequate due process.[2]

As a fallback, Respondents contend that "there is always a public interest in prompt

[2] Respondents further contend that the "decision to revoke the OSUP *alone* satisfies ICE's regulatory obligations" because of a purported delegation by the EAC pursuant to 8 C.F.R. § 241.4(c)(4), and therefore the revocation notice did not need a public interest determination. [Doc. No. 4] at 10 (emphasis in original). The Court need not address the substantial issues the Petitioner has raised concerning the propriety of the purported delegation since Respondents, in revoking Petitioner's OSUP, purported to do so pursuant to the requirements of 8 C.F.R. § 241.4(*l*).

execution of removal orders," [Doc. No. 4] (citing *Nken v. Holder*, 556 U.S. 418, 436 (2009)), but the operative word there is "prompt" and the Court fails to see how Respondents can promptly remove Petitioner, who has withholding of removal to El Salvador, when it has not even presented Petitioner's requested removal to any third country, let alone secured the requisite documents, which in this Court's experience could take months, if not years.

For these reasons, the Court concludes that the July 2, 2026 revocation notice was unlawful under the *Accardi* doctrine.

B. Revocation of Petitioner's Order of Supervision

In Count Five, Petitioner claims that he is entitled to immigration judge review of the asylum officer's negative fear determination of his removal to Mexico. [Doc. No. 1] at 18. Despite repeatedly representing their intention to remove Petitioner to Mexico, [Doc. No. 4] at 2, 4, 10, 15, Respondents contend that Petitioner's claims regarding third country removal are not ripe for review because Petitioner had not yet stated a fear of removal to Mexico, and he is not entitled to immigration judge review of a negative fear determination.

Petitioner has also now expressed fear through counsel of any prospective removal to Mexico, undergone a Third Country Screening, and received a negative determination, [Doc. No. 7] at 13, and his third country removal claim is therefore ripe. As to the merits of that claim, this Court has previously rejected Respondents' position, and held in a materially identical case that noncitizens, such as Petitioner, are entitled to sufficient procedures for reviewing their fear of removal to alternative countries as a matter of procedural due process. *See* Order, *Benitez Pineda v. Noem et al.*, No. 1:25-cv-2337 (E.D. Va. Mar. 2, 2026), Dkt. No. 17 (addressing whether Petitioner was entitled to immigration judge review of any claim of fear removal to a third country,

effectuated pursuant to the Government's March 30, 2025 guidance). For the reasons discussed in *Benitez Pineda*, the Court finds that Petitioner is entitled, as a matter of procedural due process, to immigration judge review of any negative fear determination to a third country of removal, as described in the regulations governing the analogous context, 8 C.F.R. §§ 208.31, 1208.31.

## IV. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Petition be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that Petitioner be **RELEASED** from custody immediately subject to his September 16, 2013 Order of Supervision, which may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13; and it is further

**ORDERED** that if Petitioner is again detained in compliance with the applicable regulations, Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are **ENJOINED** from removing Petitioner from this judicial district and the continental United States unless (1) he has first received review by an immigration judge, pursuant to 8 C.F.R. § 208.31(g), of the United States Citizenship and Immigration Services asylum officer's negative decision regarding whether he has a reasonable fear of persecution or torture if removed to Mexico; and (2) all other requirements of 8 C.F.R. § 208.31(g) have been satisfied.

The Clerk is directed to send this Order to all counsel of the record, and to terminate the case.

August 4, 2026
Alexandria, Virginia

Anthony J. Trenga
United States District Judge